UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

GINA VINCENT
Individually and as Personal Representative
of the Estate of James Vincent,

        Plaintiff,

        v.                                                    Case No. 08-C-0572

OMNIFLIGHT HELICOPTERS INC., et al.,

        Defendants.

---

**ORDER GRANTING MOTION TO SUBSTITUTE EXPERT WITNESS**

---

        This is a wrongful death action arising out of the April 13, 2006 crash of a Messerschmidt-Boelkow-Blohm ("MBB") 105 LS-3 Helicopter which killed plaintiff's husband, James Vincent. According to the report of the National Transportation Safety Board, the crash was caused by a restriction in a tail rotor pedal cover ("Box") which had been envisioned, designed and manufactured as a "field modification" by Defendant Omniflight Helicopters, Inc., ("Omniflight") as part of a conversion to a medical evacuation configuration jointly performed by Omniflight and MBB Helicopter Corporation, a United States subsidiary of MBB Deutschland.

        The case is presently before the Court on plaintiff's motion to substitute an expert witness. Plaintiff properly disclosed four liability experts and one economic expert within the time permitted under the Court's scheduling order. The motion seeks to replace one of those experts, Mark Goodrich, who was retained to testify concerning Federal Aviation Administration ("FAA") aircraft certification procedures in general and major Repair and Alteration ("field-approved" modification)

pursuant to FAA procedures associated with FAA Form 337. Goodrich withdrew as an expert in the case following a six-hour deposition at which counsel for Defendant Omniflight, Attorney William Katt, seriously undermined his credibility by pointing out a series of falsehoods set forth in an Experience and Qualification Profile ("Profile") which he had provided in connection with his expert report in the case. Among the falsehoods Attorney Katt exposed were the following:

> 1) Goodrich had listed in his profile that he was a current member of the Society of Experimental Test Pilots ("SETP") which he acknowledged as being the most prestigious organization for test pilots in the United States. Although Goodrich indicated that he had been listing this membership in his profile for "more than ten years", SETP had no record of his being a member of the organization or of ever having submitted an application.
>
> 2) Goodrich listed in his profile that he was a current member of the American Helicopter Society ("AHS"). AHS, however, also provided correspondence to Omniflight that Goodrich was not a current member of the organization.
>
> 3) Goodrich continued to represent that he was a current member of the American Bar Association ("ABA"), despite having allowed his ABA membership to lapse.
>
> 4) Goodrich included in his profile that he had obtained four degrees, including a B.S. in Agricultural Engineering from Iowa State; a B.S. in Aerospace Engineering from the University of Scarsdale; an M.S. in Engineering Management, also from the University of Scarsdale; and a J.D. from Drake University. During his deposition, Goodrich admitted that he did not have an Agricultural Engineering degree from Iowa State and that the University of Scarsdale was a correspondence school which may not have been an accredited academic organization.

These and other challenges to Goodrich's listed credentials were brought out in the course of the six-hour examination. Three days later, Goodrich withdrew as an expert. Plaintiff now seeks to replace Goodrich with a new expert and requests that the scheduling order be modified to permit her to do so and allow defendants to name a responsive expert. Under the current scheduling order, defendants' expert reports were due on November 9, 2009 with plaintiff's rebuttal reports due on

2

December 30, 2009. Discovery cut-off is January 31, 2010. The trial is scheduled to commence on June 7, 2010.

Defendants vigorously oppose plaintiff's motion. They argue that plaintiff should not be permitted to "try out" experts and if one fails to perform as hoped, simply replace him after the fact. Defendants note that Omniflight merely did the due diligence in investigating the expert that plaintiff's counsel should have done prior to disclosing him. They note that plaintiff has additional liability experts and contend that Goodrich's testimony was not crucial to the plaintiff's case. Indeed, defendants suggest that it may not even be admissible. To allow disclosure at this time, defendants contend, would subvert the purpose of Rule 26 expert disclosures. *See* Fed. R. Civ. P. 26. They note that Rule 26 is intended to facilitate a fair contest with basic issues and facts disclosed to the fullest practical extend. (Omniflight Br. in Opp. at 8-9) (citing *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004)). Plaintiff's counsel, Attorney James T. Crouse, made his choice of expert, they contend, and should not be able to replace the expert simply because defendants have exposed some vulnerability. To allow replacement of experts under circumstances such as this, defendants contend, could result in a series of substitutions and vastly increase the expense of litigation.

In addition, defendants argue that to permit substitution under the facts of this case would defeat one of the purposes of discovery by encouraging defendants to "hold back" on potentially damaging criticisms of an expert until trial. If a party is permitted to replace an expert after the defendants have undermined his credibility, opposing counsel will be inclined to reserve the most damaging cross-examination for trial rather than disclose the information in a discovery deposition. Such a result defeats the purpose of discovery as it permits trial by ambush, something the rules of

3

discovery seek to prevent. (*Id.* at 9) (citing *Morel v. Diamler/Chrysler Corp.*, 259 F.R.D. 17, 20 (D. Puerto Rico 2009)).

Finally, defendants contend that, since Goodrich's testimony is not crucial to plaintiff's case, denying the request for substitution is not tantamount to dismissal. Instead, plaintiff would be able to rely on the three other liability experts they have named. Under the circumstances of the case, defendants argue that plaintiff's motion should be denied.

**DISCUSSION**

Courts have looked to four factors in deciding whether to allow a party to designate a new expert after an expert disclosure deadline has expired: 1) the explanation for the failure to identify the witness earlier; 2) the importance of the testimony; 3) potential prejudice in allowing the testimony; and 4) the availability of a continuance to cure such prejudice. *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007). Based upon my consideration of those factors in this case, I conclude that the plaintiff's motion should be allowed, conditioned upon plaintiff reimbursing the defendants for the expense of preparing for and conducting the examination of the replaced expert.

Plaintiff contends that Goodrich has simply withdrawn as an expert and is no longer available to testify at trial. Although the deposition transcript does exist, plaintiff contends that his credibly is so seriously undermined that to not allow his replacement would seriously harm plaintiff's case. In light of the apparent falsification of his qualifications, plaintiff suggests that it will not matter whether Goodrich's testimony was in all other respects truthful; the jury will simply reject his testimony out of hand. Unless she is allowed to replace him with another expert, plaintiff

4

contends that she will be unable to offer evidence on a key element of her case against one or both of the defendants.

Defendants do not seriously contest plaintiff's contention that Goodrich's credibility was completely destroyed and that unless she can call another expert to testify on the same matter, this part of her case will be lost. Instead, defendants argue that it is plaintiff's own fault for failing to act with due diligence in naming Goodrich as an expert in the first place. Defendants contend that Attorney Crouse could have learned of the inaccuracies in Goodrich's profile with a number of phone calls and an Internet search. In defendant's view, the need to replace Goodrich at this point is the result of counsel's lack of diligence. As noted above, defendants also question the importance of Goodrich's testimony to plaintiff's case.

On the question of diligence, Attorney Crouse contends that he exercised reasonable diligence in disclosing Goodrich as an expert. He notes that he became acquainted with Goodrich several years ago at a Southern Methodist University Air Loss Symposium in Dallas, Texas. He claims he had known of him through other aviation attorneys prior to that time and had learned about various aspects of his background and experience through short conversations with him, other aviation attorneys and other experts. Attorney Crouse indicates that he had previously retained Mr. Goodrich and there had been no challenge to the accuracy of his resume or claimed qualifications. Based upon his own experience and conversations with Goodrich, counsel contends he appeared to be a hard worker with an encyclopedic knowledge of the FAA regulations. Although he concedes that he did not conduct an investigation as to the truth of the statements made in his profile, Attorney Crouse notes that in thirty years of practice he has never found it necessary to investigate the qualifications of individuals who he has retained as experts.

5

Case 1:08-cv-00572-WCG   Filed 11/24/09   Page 5 of 8   Document 71

On the record before me, I conclude that the need to replace Goodrich is high. It appears his testimony is of some importance. Although this matter is in dispute, it appears from the briefs that the testimony bears on an important issue in the case that is not covered by the other experts. Accordingly, I find the importance of the testimony to be significant. I also conclude that if Goodrich is not replaced, plaintiff will be unable to offer credible testimony on this issue. As a result of the false information concerning his qualifications included in Goodrich's Profile, his testimony on the issue is of no value and is likely to be discounted by the jury, regardless of its accuracy.

Clearly, plaintiff herself bears no blame for her predicament. She is not the one that chose Goodrich as an expert, and it seems unjust to allow her case to be undermined in this fashion when other steps can be taken to avoid prejudice to the defendants and at the same time further the underlying purposes of the rules regarding disclosure of experts. I note that the trial is not scheduled to begin until June of next year. No postponement should be needed, and adjustments can be made in the scheduling order to allow defendants sufficient time to conduct discovery of a new expert and to name one of their own if needed. While it is true that defendants have expended significant resources in preparing for and undertaking the deposition of plaintiff's expert, I am satisfied that this expense does not warrant an outright denial of the motion. Instead, the motion can be granted upon the condition that plaintiff reimburse defendants for the expenses incurred in preparing for and conducting the deposition of Mr. Goodrich.

Requiring plaintiff to reimburse defendants for the expenses they incurred preparing for and conducting the deposition of Mr. Goodrich is not inconsistent with my finding that she bears no blame for the fact she now finds it necessary to replace him. Parties bear the consequences of the

choices of their counsel, *see Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962), and while I do not find that Attorney Crouse acted carelessly in naming Goodrich, he clearly bears more blame than the defendants for the waste of time and money resulting from his failure to discover his inadequacies prior to naming him as an expert. Moreover, since he dealt directly with Goodrich, Attorney Crouse may even be able to place the loss on the person whose conduct caused it. As another court has remarked when confronted with this issue,

> Defendant has shown that it would incur some prejudice by the substitution; inasmuch as it has already incurred expense for its own expert to review and provide a written critique against the testimony of [the would-be substituted expert]. The court can cure that prejudice, however, by requiring plaintiff to reimburse defendant for a reasonable amount of such expense. Since the motion seeks relief to benefit plaintiff through no fault of defendant, the latter should not bear all the expense it has incurred.

*Sithon Maritime Co. v. Holiday Mansion*, No. Civ.A 96-2262-EEO, 1998 WL 433931, at *1 (D. Kan. July 30, 1998).

Although Attorney Crouse notes that plaintiff is a widow and may not have sufficient resources to meet this condition, the Court is satisfied that conditioning the decision granting the motion upon payment of expenses is appropriate. The Court presumes that the expense will be born by counsel. Attorney Crouse notes that even though co-counsel is one of the State's largest personal injury firms, he operates a one-person firm with limited resources in North Carolina, and his co-counsel is playing only a limited role. Despite this fact, however, there is no showing that counsel is unable to make arrangements to meet the condition. Requiring defendants' fees to be reimbursed is necessary in order to avoid the disincentives described by defendants in their opposition to the motion. In addition, although the Court is requiring reimbursement of the expenses associated with the deposition, such reimbursement need not occur prior to the replacement expert being named.

7

In sum, this Court concludes that plaintiff's motion should be granted conditioned upon plaintiff reimbursing defendants for their fees. As to any modifications of the scheduling order that may be necessary, counsel are directed to consult with one another and, if able to agree, submit a joint stipulation for a proposed modification of the scheduling order to accommodate the late naming of the expert. In the event counsel cannot agree, the matter should be brought back to the Court's attention.

**SO ORDERED** this   24th   day of November, 2009.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
